**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

QAWI ABDUL MUHAMMAD,
f/k/a CHARLES EDWARD POSTELL,

    Plaintiff,

v.                                          Case No. 8:04-CV-441-T-27EAJ

JAMES McDONOUGH, et al.,

    Defendants.
_____/

**ORDER**

Plaintiff, a State of Florida inmate, initiated this action *pro se* by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (Dkt. 1). Plaintiff names James McDonough,[1] Secretary, Florida Department of Corrections ("FDOC"), Brian K. Hendrickson, Warden, Avon Park Correctional Institution ("APCI"), and Steven D. Clark, Chaplain, APCI, as Defendants. The Court finds, for reasons set forth *infra*, that the complaint should be dismissed prior to service of process pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

**Background**

Plaintiff was committed to the custody of the FDOC under the name Charles E. Postell. Following his conversion to Islam, he legally changed his name to Qawi Abdul Muhammad (Dkt. 1, Ex. (unnumbered), Final Judgment of Change of Name (Adult)). *See* Fla. Stat. § 68.07 (2002).

---

[1] James McDonough, Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James V. Crosby, Jr., pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

On September 14, 2003, Plaintiff notified his classification officer of the name change and requested that he be "acknowledged by his religious name on his identification tag" (Dkt. 1, Ex. 1). Plaintiff was advised that once APCI received verification from the Office of the General Counsel, FDOC, that Plaintiff's name had been legally changed for religious reasons through a court order, his Islamic name would be added to his identification tag but his FDOC records would continue to be maintained in the name under which he was committed to prison rather than his subsequently adopted name. *Id. See* Fla. Admin. Code 33-603.101(c)(3) ("A legal religious name change does not require that the department alter official records; the inmate's committed name shall be used for all department business."). When the requisite verification was received, APCI personnel affixed a label on the back of Plaintiff's inmate identification card that displays his religious name. See Fla. Admin. Code 33-603.101(1)(c)(2).

Plaintiff filed an Inmate Request asking that Chaplain Clark add his religious name to the "callout" list for religious services under the dual name policy. Chaplain Clark responded, stating: "Even though the State recognizes your name, in matters pertaining to Department procedures, your committed name must be used." Dkt. 1, Ex. 4. On December 12, 2003, Plaintiff filed an Informal Grievance with Chaplain Clark, asserting that refusing to allow him to use his "legally changed name . . . in a dual capacity is hindrance from practicing my religion, which required me to have my name changed. . . symbolic of a spiritual change" (Dkt. 1, Ex. 5). Plaintiff also filed an Inmate Request with APCI laundry personnel asking to have both his committal name and Islamic name placed on his clothing tags. In the response, Plaintiff was advised that his clothing tags would not be changed unless he provided the laundry verification that his religious name had been added to the

FDOC computer database.[2] When Plaintiff filed a formal grievance regarding his clothing tags, he was advised that he "need[ed] to write Main-Unit [sic] classification, Mr. Austin." Nothing in the record indicates that Plaintiff attempted to contact Mr. Austin.

When Chaplain Clark rejected Plaintiff's informal grievance, he filed a formal grievance with Defendant Henderson arguing that he was not asking Chaplain Clark to remove his commitment name from the callout list, but rather that his religious name be added to his commitment name under the dual name policy. Plaintiff's claim regarding his clothing tags was also raised by Plaintiff in his formal grievances. In his response, Defendant Hendrickson advised Plaintiff that when "conducting daily business of the institution, . . . includ[ing] posting names on . . . call out forms for job assignments, interviews, as well as program attendance," FDOC personnel are required to use the inmate's commitment name. *Id.*

Plaintiff filed an appeal of Defendant Hendrickson's decision with the Secretary, FDOC, arguing that his request had been misunderstood because he was only "seeking to use [his religious] name within the prison for all related services using my identification card which has both" the religious name and the commitment name on it (Dkt. 1, Ex. 6A). Defendant Crosby found that the institutional level response Plaintiff received from Defendant Hendrickson appropriately addressed the concerns Plaintiff raised. *Id.*

---

[2]Under regulations governing the operation of FDOC facilities, inmates are required to wear regulation clothing and an identification card, in accordance with institution policy. Inmates are required to "make a change of outer clothing at least twice a week." Fla. Admin. C. § 33-602.101(2)(a). Inmates are authorized to send personal clothing to the laundry if there is no other laundering facility available for their use, provided that these items are marked with the inmate's name and prison number. Fla. Admin. C. § 33-602.101(2)(b). "If an inmate intentionally or negligently damages, loses or destroys . . . [a] state issued clothing article . . . disciplinary action . . . shall be taken by the warden to obtain reimbursement from the inmate." Fla. Admin. C. § 33-602.101(2)(f). "Institutional clothing is the property of the State of Florida and must be returned to the department upon an inmate's release from incarceration." Fla. Admin. C. § 33-602.101(2). The warden is responsible for establishing a laundry schedule for all items issued on a departmental basis, i.e., linens, coveralls, aprons, cooks' caps, gloves, raincoats, athletic uniforms, and barber and butcher jackets. Fla. Admin. C. § 33-602.101(2)(d).

After exhausting the FDOC's grievance procedures, Plaintiff filed the present § 1983 action citing *Hakim v. Hicks*, 223 F.3d 1244 (11th Cir. 2000), *cert. denied*, 532 U.S. 932 (2001), in support of his allegation that the Defendants' refusal to add his religious name to the callout list and his clothing tags violates his First Amendment right to the free exercise of his religion. Plaintiff seeks monetary and injunctive relief.

## Discussion

Inmates retain the right to the free exercise of religion. *See id.* A "dual-name policy" permitting an inmate to use a religious name in conjunction with his commitment name is, however, "sufficient to satisfy an inmate's free exercise claim involving use of a religious name." *Id.* at 1248. Moreover, "although an inmate is entitled to prospective recognition of a legal name change by means of a 'dual-name policy,' an inmate is not entitled to have documents that pre-dated his legal name change altered." *United States v. Baker*, 415 F.3d 1273, 1274 (11th Cir. 2005).

Plaintiff is correct in asserting that his claim is governed by *Hakim v. Hicks, supra*, which recognizes a "dual-name policy" for prisoners who have their names legally changed during a period of incarceration, i.e., use of both a commitment name (the name on the judgment of conviction) and a religious name. Here, Plaintiff acknowledges that the FDOC amended his inmate identification card by affixing on the back a label that displays his religious name. This procedure, approved by the majority in *Hakim*, "adequately protects, under the *Turner*[3] reasonableness standard, [an inmate's] free exercise right regarding his religious name." *Hakim*, 223 F.3d at 1251 (footnote added).

---

[3] *Turner v. Safley*, 482 U.S. 78, 89-90 (1987) (outlining four factors which a court considers in evaluating the constitutionality of prison regulations: (1) whether the regulation bears a rational connection to the legitimate governmental interest put forth to justify it; (2) whether there are available other alternative means of exercising the asserted rights; (3) the impact of accommodating the asserted right on the interest of inmates, prison personnel, and prison resources generally; and (4) whether there is an absence of ready alternatives).

Defendant Hendrickson's response to Plaintiff's Formal Grievance is consistent with the regulations governing the operation of FDOC facilities. Inmates in an FDOC facility must submit a request to the prison chaplain for permission to attend religious services.[4] If they have met the regulatory requirements for a name change, they are allowed to use both a commitment name and a religious name when requesting permission to attend religious services. The chaplain submits a list of names to the classification department, from which a "call-out list" is created identifying inmates who are permitted to attend religious services. The "call-out list" is generated using the FDOC's database, which lists inmates alphabetically by their commitment name. Although the database allows the inclusion of religious names as an alias, the database cannot produce a list based on an alias. Consequently, alphabetical lists generated from the database include only the commitment name. The "call-out list" is then used to create a "movement sheet," which is posted in the various housing units. This "movement sheet" identifies the inmates who are allowed to attend religious services, and as a result, the correctional officers are able to monitor the movement of inmates. The "movement sheet" contains the inmates' commitment names only. Likewise, the FDOC must maintain an inventory of inmate uniforms by commitment name to facilitate the enforcement of Fla. Admin. C. § 33-602.101(2), *supra* n. 2.

---

[4]The Court takes judicial notice of the information provided by Defendant Clark in a sworn affidavit filed in this district on June 6, 2005. See *Walee v. Crosby*, 2006 W.L. 680807 (M.D. Fla. Mar. 16, 2006) (asserting a First Amendment claim under § 1983 against the same defendants named herein substantially similar to the claim presented by Plaintiff). See *ITT Rayonier Inc. v. United* States, 651 F.2d 343, 345 n.2 (5th Cir. 1981) (a court may take judicial notice of its own records or of those of inferior courts) (citing *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1277 n.33 (5th Cir. 1978) (holding that when faced with issues similar and in some respects identical to those considered in prior proceedings, a district court has the right to take notice of its own files and records)).

Whether the "movement sheet" and clothing tags must use Plaintiff's religious name in addition to his commitment name is resolved by the Eleventh Circuit's holding in *Hakim*, which does not require that the FDOC allow Plaintiff to use his religious name in conjunction with his commitment name in all facets of prison life. While *Hakim* states that a dual-name policy is valid "so long as [the inmate] can obtain all related services under the dual-name policy," *Hakim* was specifically referring to notary services, canteen purchases, and banking transactions and did not require the FDOC to change their computer database. The Eleventh Circuit held, in fact, to the contrary, stating:

> [Hakim] sought to compel the DOC to follow a dual-name policy . . . in the 'Alpha Run' master database of prisoner information. . . . [T]he district court granted summary judgment to the DOC on the database claim. The database, although primarily using the commitment name, includes a (non-searchable) field for aliases, to which Hakim's religious name had been added. Hakim has not appealed these rulings, which in any event were correct.

*Hakim v. State*, 223 F.3d at 1246. Consequently, the Defendants' use of only Plaintiff's commitment name on the "movement sheet," which is created from the alphabetical list that is generated by the FDOC's database, and the clothing tags is not contrary to *Hakim*.

Turning to Plaintiff's assertion that the individual who responded to his December 23, 2003 grievance "stepped beyond his authority and threaten[ed] Plaintiff not to use any other name but my committed name" (Dkt. 1 at 9A), Plaintiff does not assert that any actions were taken against him in retaliation for using his religious name. *See Yasir v. Singletary*, 766 So.2d 1197, 1198-99 (Fla. 5th DCA 2000) (inmate unsuccessfully challenged the loss of sixty days gain time for using his new religious name in conjunction with his committed name on official documents before the FDOC had administratively implemented the changed name). A claim of verbal harassment by a member of the FDOC staff, standing

alone, is not cognizable under § 1983. *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (citations omitted) ("[M]ere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations"). *See also Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973); *Shiflet v. Cornell*, 933 F.Supp. 1549, 1556 (M.D. Fla. 1996).

As to Plaintiff's requests for injunctive relief, when he filed his complaint, Plaintiff was incarcerated in the Avon Park Correctional Institution, Avon Park, Florida. Plaintiff has since been transferred to the Sumter Correctional Institution.[5] It is well established that "an inmate's request for injunctive and declaratory relief in a [§] 1983 action fails to present a case or controversy once an inmate has been transferred." *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir.), *cert. denied*, 488 U.S. 1046 (1989)).

The responses Plaintiff received to his formal grievances are consistent with the *Hakim* decision. Pleadings drafted by laymen are to be interpreted by application of less rigid standards than those applied to formal documents prepared by lawyers. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (holding that "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys"). A Plaintiff is not required to prove his claim in his petition, but he must allege sufficient facts in the petition which, when viewed in the light most favorable to him, support the conclusion that he may be able to establish that he is entitled to the relief he seeks. "[E]ven in the case of *pro se* litigants . . . leniency does not give a court license to serve as *de facto* counsel for a party,

---

[5]The Court takes judicial notice of information available at the Florida Department of Corrections Offender Information Network, viewed December 5, 2006, stating that Plaintiff is currently incarcerated at the Sumter Correctional Institution. *See* Fed. R. Evid. 201. Plaintiff was cautioned that failure to advise the Court of any change of address "will result in the case being dismissed for failure to prosecute, see Dkt. 7 at 2. Plaintiff has not filed a notice of change of address.

. . or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998). *See also Pontier v. City of Clearwater, Fla.*, 881 F.Supp. 1565, 1568 (M.D.Fla. 1995).

### Conclusion

The Court concludes that no relief could be granted against the Defendants under any set of facts that could be proved consistent with the allegations in the complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Plaintiff has not shown any immediate risk of substantial or irreparable harm, and neither amendment nor discovery will cure the deficiencies in the complaint. The Court finds, therefore, that the complaint is subject to dismissal for failure to state a claim for which relief may be granted.

**ACCORDINGLY**, the Court **ORDERS** that Plaintiff's civil rights complaint is **DISMISSED** (Dkt. 1). The **Clerk** shall enter judgment against Plaintiff, terminate all pending motions, and close this case.

**ORDERED** in Tampa, Florida, on December 8th, 2006.

JAMES D. WHITTEMORE
United States District Judge

Copy to: *Pro Se* Plaintiff
SA:jsh